UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

| | |
|---|---|
| **Andrew Browne**, | Case No. |
| Plaintiffs, | |
| v. | |
| **John Doe 1-6,** Minneapolis Police Officers in their official and individual capacities, | **COMPLAINT** **(WITH JURY DEMAND)** |
| Defendants. | |

## INTRODUCTION

1. Like so many other people, in the wake of George Floyd's death, Andrew Browne has responded to the tragedy by doing what he can to make his community a better place. For Browne, who lives just one block from where George Floyd died, that has meant supporting the work of activists who have stationed themselves around the George Floyd Memorial in South Minneapolis and helping to keep the peace in that area.

2. On June 26, 2020, Browne helped a group of volunteers who were providing security around the George Floyd Memorial after they detained a suspected white supremacist who had thrown something through a window and

1

threatened people in the area. Browne and the others tried to work with the Minneapolis Police Department to have the man placed into police custody but the police showed little interest despite the danger the man posed. When six officers, the Defendants in this case, finally responded after more than an hour, Browne expressed his displeasure with their response. A Minneapolis Police Officer then retaliated against Browne by shoving him to the ground without justification as all six officers fled without detaining the dangerous man.

3. Through their actions, Defendants violated Browne's constitutional right to be free from excessive force and retaliation for constitutionally-protected speech and association.

## JURISDICTION AND VENUE

4. This Court has federal question subject matter jurisdiction because Plaintiff's claims are based on federal law.

5. Venue in this Court is proper pursuant to 28 U.S.C. § 1391, as the parties are residents of this State and District and the events giving rise to the case occurred in this State and District.

## PARTIES

6. Plaintiff Andrew Browne is a resident of Minneapolis, Minnesota.

7. Defendants John Doe 1-6 are police officers in the Minneapolis Police Department. At all times relevant to this case, John Doe 1-6 acted under color of state law. Plaintiff refers to Defendants as John Doe 1-6 as the individual officers did not identify themselves during the events giving rise to his claims. He reserves the right to amend his complaint upon identification of the individuals responsible for the violation of his rights as alleged herein.

## FACTUAL BACKGROUND

8. On May 25, 2020, George Floyd, an African-American man, was killed while in the custody of four officers of the Minneapolis Police Department.

9. The killing of George Floyd occurred at the intersection of 38th Street and Chicago Avenue in the Powderhorn neighborhood of South Minneapolis.

10. Since news of that horrific event broke, members of the community and people from around the world have consecrated the area around 38th and Chicago, erecting a memorial and recognizing it as a place of reflection, mourning, and community organizing.

11. Since at least early June, the streets around the intersection have been closed off to traffic and police officers have mostly stayed away from the area.

12. Plaintiff Andy Browne lives just one block away from the site of George Floyd's killing and the memorial that was built after it occurred.

13. Browne was deeply moved by the news of George Floyd's killing, especially since it occurred so close to where he lives.

14. The events of late May and early June motivated Browne to get involved in the organized response in opposition to systemic racism and police mistreatment of people of color.

15. As part of his response to what happened, Browne engaged with members of the community responsible for organizing various activities near the George Floyd Memorial. He began volunteering his time and effort to the causes being championed there.

16. On June 26, 2020, Browne was engaged in such activity. He was helping some of the activists in the area raise a basketball hoop for kids in the area to use.

17. As he was doing that, he saw several men he knew were volunteering to provide security around the memorial. They were leading a burly white man away from the memorial.

18. Browne approached the security team and asked what had happened. They told him the white man had thrown something through the window of the convenience store at the center of the memorial and was also threatening people in the area.

19. The security team explained that they had seen and actually filmed the white man's actions and had quickly detained him to prevent any additional destruction or violence.

20. Somebody at the scene had called the Minneapolis Police Department to report the incident and request that they come to take the white man into custody.

21. The dispatcher instructed them to take the white man a few blocks away from the memorial, outside of the area where traffic was blocked.

22. Browne joined the security team in waiting for the police. During that time the security team and Browne discerned from the white man's tattoos that he was likely a white supremacist. With this knowledge, they became more determined to ensure that the white man was taken into custody away from the memorial where he could do more harm.

23. After approximately 60 minutes, the police still had not arrived to detain the man. Another call was placed to the police dispatcher who instructed the group to take the white man a few blocks away from where they were waiting.

24. Browne helped to transport the white man over to the location identified by the dispatcher. When they arrived, the police were nowhere to be found.

25. Approximately 20 more minutes passed with no police officers arriving at the scene, so another call was placed to the dispatcher. This time the dispatcher told the men to release the white man, despite having been told of his dangerous behavior at the memorial and the fact that he appeared to be a white supremacist.

26. The security team and Browne insisted that they could not release the white man without endangering others in the area, so the dispatcher instructed them to once again travel a few blocks away to meet police officers who could detain the white man.

27. Browne was the first in the group to arrive at 39th Street and Park Avenue where he saw six Minneapolis Police Officers standing near the

intersection. These six officers are the named defendants in this case, John Doe 1-6.

28.   Browne told the officers that the white man was in another vehicle that was close behind him. He then asked the officers what had taken them so long and why they kept changing the location where they were supposed to meet.

29.   Immediately after Browne asked his question, one of the officers became visibly upset and instructed the other officers to get in their cars to leave without even seeing, let alone arresting, the white man detained by the security team.

30.   All six of the officers quickly made their way to their police vehicles. Browne walked toward them at a normal pace without getting too close. He asked why they were leaving.

31.   Just as he got his question out one officer quickly turned, stepped toward Browne and forcefully shoved him, knocking him to the ground.

32.   None of the officers at the scene had warned Browne that he needed to keep his distance from them, or that they would use force against him if he approached them.

33. As a result of the fall, Browne was hurt both physically and mentally. He immediately experienced physical pain from being shoved and hitting the ground. He also felt, and continues to feel, dismay that the officers acted that way.

34. Before Browne could return to his feet the entire group of officers got into their vehicles and sped away, still having never laid eyes on the white man.

35. At no point during his encounter with the officers did Browne present any threat of harm to them or anybody else in the area.

36. The officer who shoved Browne did so in retaliation for his criticism of their response to the situation, and for his association with the protest movement related to the killing of George Floyd.

## COUNT I:

## EXCESSIVE USE OF FORCE

### TITLE 42 U.S.C. § 1983 — FOURTH AMENDMENT

37. Browne incorporates the allegations set forth in each of the preceding and subsequent paragraphs as if fully set forth herein and throughout.

38. The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A police officer violates the

Fourth Amendment when he uses excessive force against an individual. *Graham v. Connor*, 490 U.S. 386, 394 (1989).

39. One of John Doe 1-6 violated Browne's Fourth Amendment rights by using excessive force against him when the officer pushed Browne to the ground without any justification while acting under color of state law.

40. The officer's use of force against Browne was excessive because it was not reasonably necessary for any legitimate law enforcement purpose.

41. Browne was injured as a result of the officer's use of excessive force. As a direct and proximate result of Defendants' acts and omissions, Browne experienced physical pain and suffered mental and emotional pain, short- and long-term emotional injury, dignitary harm, discomfort, embarrassment, humiliation, fear, anxiety, apprehension, sleeplessness, a generally diminished sense of personal and family safety, increased fear of law enforcement, attorneys' fees, the costs of bringing suit, and more.

42. Defendants, as a result of their illegal behavior, are liable to Browne for the above-mentioned injuries, as well as punitive damages.

43. Total damages suffered by Browne are to be further determined at trial.

## COUNT 2:

## FIRST AMENDMENT RETALIATION

## TITLE 42 U.S.C. § 1983 — FIRST AMENDMENT

44.     Browne incorporates the allegations set forth in each of the preceding and subsequent paragraphs as if fully set forth herein and throughout.

45.     The First Amendment protects the right to free speech. U.S. Const. amend. I. Among those rights are the right to associate with individuals or groups in the advancement of beliefs and ideas. *Nat'l Ass'n for Advancement of Colored People v. Button*, 371 U.S. 415, 430 (1963). The First Amendment prohibits retaliation by state actors against individuals on the basis of their constitutionally-protected speech and association.

46.     When one of John Doe 1-6 shoved Browne, he did so in retaliation for Browne engaging in constitutionally-protected expression of displeasure with the officers' inadequate response to the reports of the white man's danger to the community, as well as his constitutionally-protected association with the activists organizing in response to the killing of George Floyd.

47.     There was a causal connection between the retaliatory animus of John Doe 1-6 and the injuries Browne suffered.

48.     Browne was injured as a result of the officer's use of excessive force. As a direct and proximate result of Defendants' acts and omissions, Browne experienced physical pain and suffered mental and emotional pain, short- and long-term emotional injury, dignitary harm, discomfort, embarrassment, humiliation, fear, anxiety, apprehension, sleeplessness, a generally diminished sense of personal and family safety, increased fear of law enforcement, attorneys' fees, the costs of bringing suit, and more.

49.     Defendants, as a result of their illegal behavior, are liable to Browne for the above-mentioned injuries, as well as punitive damages.

50.     Total damages suffered by Browne are to be further determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff requests that this Court enter judgment in favor of Plaintiff and against Defendants, as follows:

1. An order declaring that Defendants' actions and practices violated the Fourth Amendment and the First Amendment;

2. An order declaring that Defendants' actions and practices injured Plaintiff;

3. An order granting Plaintiff judgment against Defendants;

4. An order granting Plaintiff all relief available in law and equity;

5. An order granting Plaintiff compensatory damages;

6. An order granting Plaintiff emotional distress damages;

7. An order granting Plaintiff liquidated damages;

8. An order granting Plaintiff punitive damages;

9. An order granting Plaintiff pre- and post-judgment interest;

10. An order for Defendants to pay Plaintiff's costs, interest, and attorneys' fees;

11. An order for Defendants to pay any and all further relief available, such as any relief the Court may consider equitable and/or appropriate.

*Plaintiff demands a jury trial.*

Dated:  July 13, 2020                              **MADIA LAW LLC**

                                                   /s/Sam Kramer

                                                   Samuel J. Kramer, MN #400743
                                                   Joshua A. Newville, MN #395221
                                                   323 Washington Ave. N., #200
                                                   Minneapolis, Minnesota 55401
                                                   P: 612.349.2720 | F: 612.235.3357